Joseph Sager, Respondent, *v.* Henry Friedman et al., Appellants, and Kaufwein Realty Co., Inc., Respondent.

(Argued March 10, 1936; decided April 14, 1936.)

*Frederick E. Weinberg* and *I. Vernon Werbin* for appellants. The action is one to recover damages for fraud and deceit. (*Ketcham* v. *Wilbur,* 218 App. Div. 350; *Hahl* v. *Sugo,* 169 N. Y. 109; *Jones* v. *Gould,* 123 App.

Div. 236; *Perlman* v. *East Annadale Beach Corp.*, 233 App. Div. 599; *McVey* v. *Security Mutual Life Ins. Co.*, 118 App. Div. 466; *Port* v. *Holzinger*, 212 App. Div. 124; *Hayes* v. *Durham*, 194 App. Div. 848; *Winter* v. *American Aniline Products, Inc.*, 236 N. Y. 199; *Hurowitz, Inc.*, v. *Selkin*, 241 App. Div. 269; *Deyo* v. *Hudson*, 226 N. Y. 685; *Gaylord* v. *Brown*, 128 App. Div. 340; *Bomeisler* v. *Forster*, 10 App. Div. 43; *Peck* v. *Goodberlett*, 109 N. Y. 180; *Meyers* v. *City of New York*, 58 App. Div. 534; *Weigel* v. *Cook*, 237 N. Y. 136; *Reno* v. *Bull*, 226 N. Y. 546; *People* v. *Stephens*, 71 N. Y. 527; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170; *Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 170; *Adams* v. *Clark*, 239 N. Y. 403; *City of Syracuse* v. *Hogan*, 234 N. Y. 457.) The plaintiff has failed to prove facts sufficient to constitute a cause of action to recover damages for fraud and deceit. (*Urtz* v. *N. Y. C. & H. R. R. R. Co.*, 202 N. Y. 170; *Reno* v. *Bull*, 226 N. Y. 546; *Parmenter* v. *Fitzpatrick*, 135 N. Y. 190; *Hotaling* v. *Leach & Co.*, 247 N. Y. 84; *Matter of Colt*, 125 Misc. Rep. 373; 215 App. Div. 804; *Matter of Laidlaw*, 176 N. Y. Supp. 885; *President & Directors of Manhattan Co.* v. *Williams*, 152 Misc. Rep. 901; *People ex rel. Szerlip* v. *Goldfogle*, 118 Misc. Rep. 8; *Newell* v. *Chapman*, 74 Hun, 111; *Commercial Credit Corp.* v. *Wells*, 228 App. Div. 402; *McDowell* v. *Volk*, 164 App. Div. 311.) The plaintiff has an adequate remedy at law. (*Duffy Co.* v. *Todebush*, 173 App. Div. 205; *Dennin* v. *Finecune*, 96 Misc. Rep. 247; 176 App. Div. 946; 227 N. Y. 607; *Brown* v. *Werblin*, 138 Misc. Rep. 29; *Schank* v. *Schuchman*, 212 N. Y. 352; *Blank* v. *La Montagne, Chapman Co.*, 123 Misc. Rep. 238.)

*Charles Warner* for plaintiff, respondent. Plaintiff has no adequate remedy at law. (*Owen* v. *Mandeville*, 95 N. Y. 237; *Abramson* v. *Leo*, 240 App. Div. 343; *Rice* v. *Van Vranken*, 132 Misc. Rep. 82; 225 App. Div. 179; *Merrihew* v. *Parrott*, 168 App. Div. 704; *Bergelt* v. *Roberts*,

144 Misc. Rep. 832; *Millspaugh* v. *Cassedy*, 191 App. Div. 221; *American Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552; *Ohio Match Sales Co.* v.. *Everhard*, 126 Misc. Rep. 23; 216 App. Div. 800; *Saltus* v. *Bedford Co.*, 133 N. Y. 499; *Center* v. *Weed*, 63 Hun, 560; *Petrolia Mfg. Co.* v. *Jenkins*, 29 App. Div. 403; *Prescott & Son, Inc.*, v. *Nye*, 223 App. Div. 356; *Johnson* v. *Brooks*, 93 N. Y. 337; *Duffy Co.* v. *Todebush*, 173 App. Div. 205; *Lang's Creamery, Inc.*, v. *City of Niagara Falls*, 224 App. Div. 483; *Longo* v. *Sparano*, 119 Misc. Rep. 402; *Hawley* v. *Cramer*, 4 Cow. 717.) Equity must respond to the facts in this case. (*Wiswall* v. *Hall*, 3 Paige Ch. 313; *Valentine* v. *Richardt*, 126 N. Y. 272; *Harrison* v. *Obermeyer & Liebmann Brewing Co.*, 64 App. Div. 499; *Hutcheson* v. *Crandall*, 206 App. Div. 718; *Cushman* v. *Thayer Mfg. Jewelry Co.*, 76 N. Y. 365; *Corkhill* v. *Landers*, 44 Barb. 218; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Thompson* v. *Blanchard*, 4 N. Y. 303; *Brown* v. *Bowen*, 30 N. Y. 519; *Tefft* v. *Munson*, 57 N. Y. 97; *Longo* v. *Sparano*, 119 Misc. Rep. 402; *Doscher* v. *Wyckoff*, 113 N. Y. Supp. 655; 132 App. Div. 139; *DePeyster* v. *Hasbrouck*, 11 N. Y. 582; *Center* v. *Weed*, 63 Hun, 560; *Lattin* v. *McCarty*, 41 N. Y. 107; *People* v. *Schmidt*, 216 N. Y. 324; *Fur & Wool Trading Co.* v. *Fox, Inc.*, 245 N. Y. 215; *Johnson* v. *Brooks*, 93 N. Y. 337; *Falk* v. *Hoffman*, 233 N. Y. 199; *Newton* v. *Porter*, 69 N. Y. 133; *Holmes* v. *Gilman*, 138 N. Y. 369; *American Sugar Refining Co.* v. *Fancher*, 145 N. Y. 552.)

LEHMAN, J. By contract in writing, dated October 17, 1930, the plaintiff agreed to loan to Jessall Construction Co., Inc., $43,000. Jessall Construction Co., Inc., agreed to repay the loan as follows: " an installment of One thousand dollars on the 1st day of November, 1930, and a like installment of One thousand dollars on the 1st day of each month thereafter until the 1st day

of October, 1931, when the unpaid balance shall be due and payable; with interest thereon at the rate of six per cent per annum, payable with each installment of principal, with the privilege to the party of the second part of paying said principal sum, or the unpaid balance thereof, at any time prior thereto on ten days written notice to the party of the first part, as evidenced by the promissory note of the party of the second part."

The defendant Henry Friedman was president of Jessall Construction Co., Inc., and individually guaranteed the loan and agreed to deposit, as collateral security, certificates for $187\frac{1}{2}$ shares, constituting twenty-five per cent of the capital stock of Kaufwein Realty Co., Inc., and a certificate for fifty per cent of the capital stock of 1265 Gerard Avenue Corporation. The contract provided that upon default in repayment of the loan the plaintiff might at his option sell the said shares at public sale and " shall apply the proceeds of such sale to the amount unpaid on said principal sum and interest thereon * * * and pay the surplus, if any, to the party of the second part." By a separate indenture, executed simultaneously with the contract for the loan, and for the purpose of inducing the plaintiff to enter into that contract, one Charles J. Cohen guaranteed repayment of the loan " and the performance by the said Jessall Construction Co., Inc., and said Henry Friedman of all the terms of the said agreement on their part to be performed."

The defendant Friedman deposited as collateral the certificates of stock described in the contract. Six installment payments of $1,000 were made upon the loan; then payments ceased. In January, 1933, the plaintiff sold at public auction the shares of capital stock deposited as collateral. He was the only bidder at the sale and purchased the stock for the sum of $500. The price paid at a forced public sale for stock in a closely

owned corporation may have little if any relation to the fair value of the stock; yet upon such a sale made in accordance with the terms of the contract of loan, the lender had undoubted right to purchase the stock and to apply upon the unpaid balance of the loan only the proceeds of the sale. Then, like any other purchaser, the plaintiff might profit or lose by his purchase. His right to hold either guarantor upon his contract still remained.

The plaintiff has not sought to hold Charles J. Cohen upon his guaranty. Instead he has chosen to bring this action against the other guarantor and his wife. He alleges in his complaint, and at the trial of the action established by competent evidence, that to induce him to make the loan and to accept as collateral the deposit of twenty-five per cent of the capital stock of Kaufwein Realty Co., Inc., these defendants represented that the company " had no debts, and had no liabilities, except a first mortgage of $385,000 upon the said real property,  *  *  * taxes and other usual small bills for running expenses of the said real property," and that, in reliance upon these representations, he was induced to make the loan and accepted the pledge or deposit of stock in the Kaufwein Realty Co., Inc. The plaintiff further alleged in his complaint and established at the trial that at the time when these representations were made, the books of Kaufwein Realty Co., Inc., contained entries showing an indebtedness of that corporation owing to Henry Friedman and other officers and directors of that company, in excess of $95,000, and that twenty-five per cent of that indebtedness was owed to Henry Friedman. Thereafter the defendant Bella Friedman in an action brought in the City Court against Kaufwein Realty Co., Inc., alleged that the claim of Henry Friedman for moneys loaned to that corporation was assigned to her prior to December 18, 1925.

The second amended complaint which alleges these facts contains two causes of action. The first cause of action

contains allegations of fact sufficient to constitute a cause of action at law for fraud and further allegations intended to invoke the equitable powers of the court to grant relief where a plaintiff has no adequate remedy at law. The second cause of action contained in that complaint alleges that the assignment from Henry Friedman to his wife was fraudulent and that cause of action is, concededly, for relief under the Debtor and Creditor Law (Cons. Laws, ch. 12). The relief asked in the complaint is that the defendants-appellants be directed to assign to the plaintiffs their share of the corporation indebtedness which existed at the time when they falsely represented that no such indebtedness had been incurred.

The case was tried upon these pleadings. The plaintiff produced evidence to sustain the allegations of the first cause of action. After a motion to dismiss the complaint was denied, the defendants rested, renewed the motion to dismiss the complaint, and moved for judgment in their favor. The motion to dismiss the first cause of action was denied and judgment in favor of the plaintiff was granted which directs the assignment to the plaintiff of Henry Friedman's one-fourth interest in an indebtedness of $95,410 owing by Kaufwein Realty Co., Inc., to Friedman and others and dismisses the second cause of action. Upon this appeal we are not concerned with the correctness of an injunction granted *pendente lite* to the plaintiff. That injunction was granted under pleadings which have been superseded and is not here for review. We are also not concerned with the second cause of action under the Debtor and Creditor Law for the plaintiff has not appealed from that part of the judgment which dismisses that cause of action, and does not contend that he established it at the trial. There can be no doubt that all the findings of fact intended to establish the first cause of action are sustained by the evidence. The only question presented upon this appeal is whether upon the facts so established a court of equity could direct the

assignment by the defendants to the plaintiff of an indebtedness due to one of them because they had falsely represented that no such indebtedness existed.

A false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury. " The essential constituents of the action are tersely and adequately stated as representation, falsity, *scienter*, deception and injury." (*Ochs* v. *Woods*, 221 N. Y. 335, 338.) The findings here establish, beyond possible challenge upon this appeal, representation, falsity, *scienter* and deception. They also establish, beyond challenge upon this appeal, that the plaintiff, in reliance upon the false representations, was induced to agree to advance the sum of $43,000. All the " essential constituents " of a cause of action for fraudulent misrepresentations are then present. When, through the false representation of the defendants, the plaintiff was induced to enter into an agreement and to assume a relation which, otherwise, he would have rejected, the defendants' wrong resulted in an invasion of the plaintiff's rights which constitutes an injury. The question remains whether the relief which has been granted to the plaintiff is an appropriate remedy which the courts of this State have power to grant.

A person who has parted with consideration upon a contract induced by fraud has three remedies open to him. " He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract. * * * He may bring an action in equity to rescind the contract and in that action have full relief. * * * Lastly, he may retain what he has received and bring an action at law to recover the damages sustained." (*Vail* v. *Reynolds*,

118 N. Y. 297, 302; *Weigel* v. *Cook*, 237 N. Y. 136.) The plaintiff has rejected all three remedies as inadequate and has sought in a court of equity relief for which no precedent has been found. Absence of precedent might not, alone, be a sufficient answer to his prayer for relief. Where the equitable powers of the court are properly invoked the court may mould its decree to meet the conditions which call for remedy. The difficulty in this case is that the plaintiff has failed to show upon his first cause of action any ground for the invocation of the equitable powers of the court and has been granted relief to which he is not entitled upon any principle of law or equity.

A remedy based upon rescission of a fraudulent contract is inconsistent with a claim to benefits under the contract. The plaintiff here would gain nothing by rescission. Upon rescission he could recover only the consideration " parted with upon the fraudulent contract " and a recovery in an action to enforce repayment of the loan in accordance with the terms of the contract would result in a judgment for the same amount. In case of rescission, a judgment could be obtained only against those who are under a duty to restore the consideration received; and even they would be under a duty to return the consideration parted with by the plaintiff only upon his surrender, or, at least, offer to surrender, any benefits he has obtained from the contract. On the other hand, by standing upon the contract the plaintiff may retain the stock, deposited as collateral, which he purchased at public sale for $500, and hold not only the borrower but also the guarantors for repayment of the unpaid balance of the loan. The plaintiff has made the election which seems to offer the greatest advantage to him. He chooses to stand upon the agreement he has been induced to make. He is entitled then to retain the benefits of that agreement and to enforce every stipulation of the agreement. He is entitled, too, to damages for the loss caused to him through the defendant's fraud

in inducing him to make the bargain. He is entitled to nothing else. If the fraud causes no loss, then the plaintiff has suffered no damages.

The fraudulent misrepresentations did not constitute a part of the contract; they were merely an inducement to the making of the contract. There is a vital distinction between damages arising from a breach of warranty which is part of a contract or bargain and damages arising from a fraudulent misrepresentation. The measure of damages which flows from a breach of contract is the difference between the value of what has been received under the contract and the value of what would have been received if the contract had been performed according to its terms. Damages there are not limited to indemnity for loss suffered through the *making* of the contract. The injured party is entitled to the benefit of his bargain as written and is entitled to damages for the loss caused by failure to perform the stipulated bargain. That loss may include the profits which he would have derived from performance of the contract. The measure of damages is different for fraudulent misrepresentation. There, as we have said, the injury is the inducement to make a contract which otherwise would not have been made, and the measure of damages is indemnity for loss suffered through that inducement. From such damages " all elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as a direct result of the wrong," *i. e.*, the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain. (*Reno* v. *Bull*, 226 N. Y. 546, 553.)

The value of the shares of stock of Kaufwein Realty Co., Inc., which were deposited as collateral for the loan might have been greater if the defendants' representa-

tions as to the liabilities of the company had been true, and it is said that since the defendants, or one of them, own a one-fourth share of the indebtedness of the company in excess of the liability so represented and the plaintiff received as security for his loan, and subsequently purchased upon a public sale, twenty-five per cent of the stock of the company, the decree compelling the assignment to the plaintiff of the defendants' share in the excess liabilities of the company will place the plaintiff in the same position in which he would have been if the representation had been true. It does not follow that the plaintiff is entitled to be placed in that position. In an action at law for damages caused by the false representation the plaintiff's recovery would have been limited to indemnity for the loss sustained in making the loan, *i. e.*, the difference between the amount advanced and the amount which the plaintiff could recover from a solvent guarantor or from the sale of the collateral deposited as security for the loan. Proof of deficiency in the value of the collateral would not show that the plaintiff suffered a loss through the fraudulent inducement to make the contract for a loan, unless it is accompanied by proof that the loan could not be collected by suit against a solvent guarantor, and in this record there is no suggestion that the guarantor Cohen is not solvent. Then the difference between the value of the stock of Kaufwein Realty Co., Inc., deposited as collateral for the loan and the value it would have had if the defendants' representations as to the financial condition of that company had been true furnishes no measure of any loss suffered by the plaintiff through wrongful inducement to make the loan.

It is said that where a person has been induced to enter into a contract by fraudulent misrepresentation, a court of equity has power, even without proof of loss or damage resulting from the wrong, to compel the wrongdoer to forego, or even to transfer to the injured party, a personal

benefit which diminishes the value of the contract and which is inconsistent with the truth of the representation. That may, perhaps, be true where the element of unjust enrichment of the wrongdoer at the expense of the defrauded party is present. It is not true where the result would be that the injured party is put in a better position than he would have occupied, if he had not made the contract, and the wrongdoer is deprived of property which is not the fruit of his fraud. If the representation had been a warranty, and part of the contract, a court of equity might, perhaps, in appropriate circumstances decree specific performance of the contract, and in that way give to the plaintiff the benefit of the contract. If the defendants' share of the indebtedness owed by Kaufwein had been the fruit of their fraud consummated at the expense of the plaintiff, there might again be power in a court of equity to compel restitution to the plaintiff of moneys or property of which the plaintiff was deprived through their wrong. In truth, however, the defendants' share of the indebtedness belonged to them before their fraudulent transaction with the plaintiff. It was not the fruit of their fraud, and the decree compelling its assignment to the plaintiff does not restore to the plaintiff any property or money of which the plaintiff has been deprived by the fraudulent contract. The plaintiff's rights here are confined to enforcement of the contract and indemnity for loss caused to him by the defendants' wrong in inducing him to make the contract. He cannot obtain more in any court of law or equity. The decree in this case gives him more.

The proceeds of the sale of the stock deposited as security for the loan must, under the terms of the contract, be applied upon the loan. If the proceeds of the sale of the stock in this case were less than they would have been if the defendants' representations had been true, the difference would be reflected in the unpaid balance of the loan, and unless the guarantor was insolvent

the plaintiff would suffer no loss. The real grievance of the plaintiff is that upon the sale of the stock he purchased the stock, and the stock so purchased would be more valuable if the defendants' representations had been true. As owner of the stock he seeks a profit by the assignment to him of a proportionate share of the company's indebtedness. Another purchaser would certainly not be entitled to such profit, nor may the plaintiff claim from the defendants profits which he might have derived under his contract if the representations of the defendants had been true. Indeed, the decree awards him benefits which he might not have received if the representations had been true, and imposes upon the defendants an obligation which they did not assume and liability for damages occasioned by the wrong without proof that their wrong caused such damages.

The judgments should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.